Raul Perez (SBN 174687)
Raul.Perez@capstonelawyers.com
Melissa Grant (SBN 205633)
Melissa.Grant@capstonelawyers.com
Arnab Banerjee (SBN 252618)
Arnab.Banerjee@capstonelawyers.com
Ruhandy Glezakos (SBN 307473)
Ruhandy.Glezakos@capstonelawyers.com
Capstone Law APC
1840 Century Park East, Suite 450
Los Angeles, California 90067
Telephone:    (310) 556-4811
Facsimile:    (310) 943-0396

Attorneys for Plaintiff Cherish Nunnally

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHERISH NUNNALLY, individually as an aggrieved employee and private attorney general, and on behalf of others similarly situated,<br><br>       Plaintiff,<br><br>  vs.<br><br>DAVE & BUSTER'S, INC., a Missouri corporation; and DOES 1 through 10, inclusive,<br><br>       Defendants. | Case No. 8:16-cv-00855-DOC-KES<br><br>Assigned to the Hon. David O. Carter<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:     July 18, 2016<br>Time:    8:30 a.m.<br>Place:   Courtroom 9D |

1   **TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS**
2   **OF RECORD:**

3       **PLEASE TAKE NOTICE** that on July 18, 2016 at 8:30 a.m., or as soon
4   thereafter as counsel may be heard, in Courtroom 9D of the above-captioned court,
5   located at 411 West Fourth Street, Santa Ana, California 92701, the Honorable David O.
6   Carter presiding, Plaintiffs Cherish Nunnally will, and hereby does, move this Court to:

7       1.    Preliminarily approve the settlement described in the Joint Stipulation of
8   Class Action Settlement and Release, Notice of Class Action Settlement, and Claim
9   Form (attached collectively as Exhibit 1 to the Declaration of Raul Perez);

10       2.    Conditionally certify the proposed settlement class;

11       3.    Approve distribution of the proposed Notice of Class Action Settlement
12   and Claim Form to the settlement class;

13       4.    Appoint Cherish Nunnally as the class representative;

14       5.    Appoint Capstone Law APC as class counsel;

15       6.    Appoint Simpluris, Inc. as the claims administrator; and

16       7.    Set a hearing date for final approval of the settlement.

17       This Motion is based upon:  (1) this Notice of Motion and Motion; (2) the
18   Memorandum of Points and Authorities in Support of Motion for Preliminary Approval
19   of Class Action Settlement; (3) the Declaration of Raul Perez; (4) the Joint Stipulation
20   of Class Action Settlement and Release; (5) the Notice of Class Action Settlement; (6) the
21   Claim Form; (7) the [Proposed] Order Granting Preliminary Approval of Class Action
22   Settlement; (8) the records, pleadings, and papers filed in this action; and (9) upon such
23   other documentary and oral evidence or argument as may be presented to the Court at or
24   prior to the hearing of this Motion.  This Motion is unopposed.

25
26
27
28

1    Dated:  June 9, 2016                         Respectfully submitted,

2                                                 Capstone Law APC

3                                          By: _____

4                                                 Raul Perez
                                                  Melissa Grant
5                                                 Arnab Banerjee
                                                  Ruhandy Glezakos
6
                                                  Plaintiff Cherish Nunnally
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................... 1

II. FACTS AND PROCEDURE .................................................................... 2

    A. Overview of the Litigation ................................................................ 2

    B. The Parties Settled At Mediation .................................................... 5

    C. The Proposed Settlement Fully Resolves Plaintiff's Claims .......... 5

        1. Composition of the Settlement Class ...................................... 5

        2. Settlement Consideration ......................................................... 5

        3. The Settlement Reasonably Provides for a Partial Reversion and a Claims Process ........................................................................ 7

        4. Release by the Settlement Class .............................................. 10

III. ARGUMENT ........................................................................................... 10

    A. Conditional Class Certification Is Appropriate for Settlement Purposes ........ 10

    B. Plaintiff's Claims Present Predominant Questions of Law and Fact .............. 12

        1. Plaintiff's Wage Statement Claim Presents Predominant Common Issues of Law and Fact ............................................. 12

        2. Plaintiff's Rest Period Claim Presents Predominant Common Issues of Law and Fact ............................................. 13

        3. Plaintiff's Meal Period Claim Presents Predominant Common Issues of Law and Fact ............................................. 14

        4. Plaintiff's Off-the-Clock Claim Presents Predominant Common Issues of Law and Fact ............................................. 17

        5. Plaintiff's Business Expense Reimbursement Claim Presents Predominant Common Issues of Law and Fact ...................... 18

        6. Cherish Nunnally Will Adequately Represent the Interests of the Proposed Settlement Class ....................................................... 19

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

7. Class Settlement Is Superior to Other Available Means of Resolution ................................................................19

C. The Proposed Class Action Settlement Should Receive Preliminary Approval ...........................................................20

1. Courts Review Class Action Settlements to Ensure That the Terms Are Fair, Adequate, and Reasonable .........................................20

2. The Settlement Was Negotiated after Plaintiff's Counsel Conducted a Thorough Investigation of the Factual and Legal Issues ..............................................................22

3. The Settlement Was Reached through Arm's-Length Bargaining in Which All Parties Were Represented by Experienced Counsel .........22

4. The Proposed Settlement Is Reasonable Given the Strengths of Plaintiff's Claims and the Risks and Expense of Litigation ...................23

D. The Proposed PAGA Settlement Is Reasonable ...............................................26

E. The Proposed Class Representative Enhancement Payment Is Reasonable ....................................................................26

F. The Negotiated Attorneys' Fees and Costs Are Reasonable ...........................27

G. The Proposed Class Notice Adequately Informs Class Members About The Case And Proposed Settlement ........................................29

IV. CONCLUSION ...............................................................30

1

## TABLE OF AUTHORITIES

2

3 **FEDERAL CASES**

4 *Alonzo v. Maximus, Inc.*, 275 F.R.D. 513 (C.D. Cal. 2011) ................................ 11

5 *Blackwell v. Skywest Airlines, Inc.*, 245 F.R.D. 453 (S.D. Cal. 2007) ............................ 25

6 *Brown v. Fed. Express Corp.,* 249 F.R.D. 580 (C.D. Cal. 2008) .................................... 24

7 *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ............................... 21

8 *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ................................................ 23

9 *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 94 S. Ct. 2140, 40 L. Ed. 2d
10     732 (1974) .................................................................................................................. 29

11 *Farinella v. PayPal, Inc.*, 611 F. Supp. 2d 250 (E.D.N.Y. 2009) ...................................... 8

12 *Franklin v. Kaypro*, 884 F.2d 1222 (9th Cir. 1989) ......................................................... 21

13 *Gallucci v. Gonzales*, 603 Fed. Appx. 533 (9th Cir. 2015) ............................................... 9

14 *Gonzalez v. Officemax N. Am.*, 2012 WL 5473764 (C.D. Cal. Nov. 5, 2012) ................ 24

15 *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ........................................ 19, 21

16 *Hopson v. Hanesbrands Inc.*, Case No. 08-00844, 2009 U.S. Dist. LEXIS
17     33900 (N.D. Cal. Apr. 3, 2009) ................................................................................ 26

18 *In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL),
19     2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008) ....................................... 22

20 *In re Atmel Corp. Derivative Litig.*, No. C 06-4592 JF (HRL), 2010 U.S.
21     Dist. LEXIS 145551 (N.D. Cal. June 25, 2008) ...................................................... 23

22 In *re AutoZone, Inc.*, 289 F.R.D. 526 (N.D. Cal. 2012) .................................................. 12

23 *In re Taco Bell Wage & Hour Actions*, 2012 U.S. Dist. LEXIS 168219
24     (E.D. Cal. 2012) ....................................................................................................... 11

25 *In re WorldCom, Inc. Sec. Litig.*, No. 02-CIV-3288-DLC, 2004 U.S. Dist.
26     LEXIS 22992 (S.D.N.Y. Nov. 12, 2004) ................................................................... 8

27 *Jimenez v. Allstate Ins. Co.*, 2012 WL 1366052 (C.D. Cal. Apr. 18, 2012) ................... 24

28 *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387 (C.D. Cal. 2008) ..................................... 11

*Kenny v. Supercuts, Inc.*, 252 F.R.D. 641 (N.D. Cal. 2008)................................24

*Klier v. Elf Atochem North America, Inc.*, 658 F.3d 468 (5th Cir. 2011)...........8

*Kronfield v. Transworld Airlines, Inc.*, No. 83 CIV. 8641 (KMV), 1989
   WL 140341 (S.D.N.Y. Nov. 13, 1989) .........................................................9

*Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012) .......................................21

*Leyva v. Medline Indus. Inc.*, 716 F.3d 510 (9th Cir. 2013) ..............................11

*Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470 (9th Cir. 1995)........27

*Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003) .................................................21

*Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal.
   2004)..........................................................................................................21

*Ordonez v. Radio Shack, Inc.*, 2013 U.S. Dist. LEXIS 7868 (C.D. Cal. Jan.
   17, 2013) ...................................................................................................25

*Ortega v. J.B. Hunt Transport Inc.,* No. CV 07-8336-MWF (FMOx) (C.D.
   Cal. Dec. 18, 2012) .............................................................................. 16, 17

*Paige v. Consumer Programs, Inc.*, No. CV-07-2498-MWF (RCx) (C.D.
   Cal. July 16, 2012) ............................................................................... 16, 17

*Schiller v. David's Bridal, Inc.*, No. 1:10-cv-00616-AWI-SKO, 2012 U.S.
   Dist. LEXIS 80776 (E.D. Cal. June 28, 2012)............................................9

*Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560  (N.D. Ill. 2011) .....................8

*Stanton v. Boeing Company*, 327 F.3d 938 (9th Cir. 2003)................................21

*Torrisi v. Tuscson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993)......................21

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002)..............................27

*Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541 (2011)............................... 11, 17

*Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168 (9th Cir. 2010)..............20

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001)..............11

STATE CASES

*Aguiar v. Cintas Corp. No. 2*, 144 Cal. App. 4th 121 (2006)...........................23

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1   *Brinker Rest. Corp. v. Super. Ct.*, 53 Cal. 4th 1004 (2012) ........................................ 14, 15

2   *Brinker Restaurant Corp. v. Super. Ct.*, 53 Cal. 4th 1004 (2012) ...................................23

3   *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43 (2008) .................................................28

4   *Cicairos v. Summit Logistics,* Inc., 133 Cal. App. 4th 949 (2005)..................................14

5   *Gentry v. Super. Ct. (Circuit City Stores)*, 42 Cal. 4th 443 (2007) ................................23

6   *Jaimez v. Daiohs USA, Inc.*, 181 Cal. App. 4th 1286 (2010) .........................................23

7   *Lealao v. Beneficial Cal. Inc.*, 82 Cal. App. 4th 19 (2000).........................................27

8   *Microsoft I-V Cases*, 135 Cal. App. 4th 706 (2006)....................................................9

9   *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094 (2007).......................................14

10  *Neary v. Regents of University of California*, 3 Cal. 4th 273 (1992)..................................9

11  *Nordstrom Com. Cases*, 186 Cal. App. 4th 576 (2010) ...............................................26

12  *Richmond v. Dart Industries, Inc.*, 29 Cal. 3d 462 (1981).............................................23

13  *Sav-On Drug Stores, Inc. v. Super. Ct. (Rocher)*, 34 Cal. 4th 319 (2004) .........................23

14  *Serrano v. Priest*, 20 Cal. 3d 25 (1977) .............................................................27

15  *Smith v. Super. Ct.*, 39 Cal. 4th 77 (2006) .........................................................23

16

17  **FEDERAL STATUTES**

18  Fed. R. Civ. P. 23 ....................................................................................20

19  Fed. R. Civ. P. 23(a) .............................................................................. 11, 19

20  Fed. R. Civ. P. 23(a)(2) ..............................................................................12

21  Fed. R. Civ. P. 23(a)(4) ..............................................................................19

22  Fed. R. Civ. P. 23(b) .................................................................................11

23  Fed. R. Civ. P. 23(b)(3) ............................................................................ 11, 12

24  Fed. R. Civ. P. 23(c)(2) ............................................................................ 29, 30

25  Fed. R. Civ. P. 23(e) .................................................................................21

26  Fed. R. Civ. P. 23(e)(1) ..............................................................................21

27  Fed. R. Civ. P. 23(e)(1)(A)............................................................................20

28

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**STATE STATUTES**

Cal. Lab. Code § 226(e) ........................................................................................12


**SECONDARY AUTHORITIES**

3 Conte & Newberg, *Newberg on Class Actions* (4th ed. 2002)................................ 21, 22

Alba Conte & Herbert B. Newberg, Newberg On Class Actions (4th ed. 2002)........................................................................................................7

Manual for Complex Litigation (4th ed. 2004)............................................. 20, 30

*Manual for Complex Litigation*, Third (Fed. Judicial Center 1995) .................................30

Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements:  An Empirical Study*, J. of Empirical Legal Studies, Vol. 1, Issue 1, March 2004 ........................................................................................29

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Cherish Nunnally seeks preliminary approval of the Joint Stipulation of Class Action Settlement and Release,[1] which if approved, would provide significant monetary relief for approximately 2,350 current and former employees of Defendant Dave & Buster's, Inc. ("Defendant" or "Dave & Buster's") (collectively with Plaintiff, the "Parties").

The basic terms of the Settlement provide for the following:

(1)    Conditional certification of a Settlement Class defined as:  All persons who worked for Defendant in a California "Dave & Buster's" restaurant as a server at any time during the period from August 2, 2009 until the date of Preliminary Approval.

(2)    A Class Settlement Amount of $2,100,000.  The Class Settlement Amount includes:

(a)    A Net Settlement Amount of approximately $1,317,500 (the Class Settlement Amount minus the requested Attorneys' Fees and Costs, Claims Administration Costs, the payment to the California Labor and Workforce Development Agency ("LWDA"), and the Class Representative Enhancement Payment), which will be allocated to all Class Members on a pro-rata basis according to the number of weeks each Class Member worked during the Class Period.  At least 55% of the Net Settlement Amount will be paid to Participating Class Members, and not retained by Defendant, regardless of the number of claims submitted by Participating Class Members.  Unclaimed amounts over the 55% minimum will be retained by Defendant.

(b)    Attorneys' fees of $700,000 and litigation costs/expenses of $25,000 to Capstone Law APC ("Plaintiff's Counsel" or "Capstone");

---

[1] Hereinafter, "Settlement" or "Settlement Agreement."  Unless indicated otherwise, all capitalized terms used herein have the same meaning as those defined by the Settlement Agreement.

(c)    Claims administration costs of approximately $40,000, to be paid to the mutually approved class action Claims Administrator, Simpluris, Inc. ("Simpluris");

(d)    A $7,500 payment to the LWDA pursuant to the Labor Code Private Attorneys General Act ("PAGA"); and

(e)    A Class Representative Enhancement Payment of $10,000 to Plaintiff Cherish Nunnally for her services on behalf of the Settlement Class.

An objective evaluation of the Settlement confirms that the relief negotiated on the class' behalf is fair, reasonable, and valuable.  The Parties negotiated the Settlement at arm's length with the guidance of Mark Rudy, an experienced and well-respected class action mediator, and the Settlement provides relief to Class Members comparable to that which they might have hoped to win at trial; indeed, the settlement provides an average net recovery of approximately $560.  The relief offered by the Settlement is particularly notable when viewed against the difficulties encountered by plaintiffs pursuing wage and hour cases (*see infra*).  Indeed, the proposed relief is arguably superior to the relief that the class might have obtained after additional costly litigation because by settling now, rather than proceeding to trial, Class Members will not have to wait (possibly years) for relief, nor will they have to bear the risk of class certification being denied or of Defendant prevailing at trial.

As discussed below, the proposed Settlement satisfies all criteria for preliminary settlement approval and falls within the range of reasonableness.  Moreover, the proposed settlement class is appropriate for provisional certification.  Accordingly, Plaintiff respectfully requests that this Court grant preliminary approval of the Settlement Agreement.

## II.    FACTS AND PROCEDURE

### A.    Overview of the Litigation

Dave & Buster's owns and operates over 84 dining and amusement venues across the United States, including nine in California.  Plaintiff Cherish Nunnally was

1    employed by Dave & Buster's as a non-exempt Server from March 2011 to July 2012 in

2    Irvine, California. Ms. Nunnally alleges that Dave & Buster's policies and practices

3    violate the California Labor Code.

4        Ms. Nunnally originally filed this action in San Francisco County Superior Court

5    on August 2, 2013. The action was brought on behalf of all persons who were employed

6    by Dave & Buster's as Servers. The complaint alleged causes of action for failure to:

7    (1) pay overtime wages, (2) pay minimum wages for work performed off-the-clock, (3)

8    provide meal periods and rest breaks (and to pay required premiums), (4) pay terminated

9    employees all wages due at the time of termination, (5) provide employees with accurate

10    itemized wage statements, (6) reimburse employees for business expenses, and (7) unfair

11    business practices and declaratory relief. (Declaration of Raul Perez ["Perez Decl."] ¶

12    2.)

13        On October 24, 2013, Dave & Buster's filed a motion to transfer the action to the

14    Orange County Superior Court that Plaintiff did not oppose. The Parties subsequently

15    stipulated to transfer venue on November 12, 2013. The transfer was completed on

16    January 17, 2014, and the action was assigned to the Honorable Robert J. Moss. On or

17    about December 14, 2015, the case was re-assigned to the Honorable William D.

18    Claster. (Perez Decl. ¶ 3.)

19        Following the transfer to the Orange County Superior Court, Plaintiff's Counsel

20    commenced their investigation into the claims in controversy, the defenses thereto, and

21    the developing body of wage and hour law. The investigation included the exchange of

22    information pursuant to formal and informal discovery methods, including document

23    requests and interrogatories. In response to this discovery, Plaintiff received, among

24    other things, the following information and evidence with which to properly evaluate the

25    claims: (1) Class Member demographic information (*e.g.*, information bearing on the

26    class size); (2) Dave & Buster's operating procedures and policy manuals regarding, e.g.,

27    meal and rest period policies; and (3) a representative sample of Class Members' time

28    and wage records. Using this information, Plaintiff's Counsel were able to determine (or

1   estimate), *inter alia*, the average hourly rate of pay for Class Members, the total

2   approximate number of Class Members who worked during the Class Period, the total

3   approximate number of former employees during the Class Period, the total approximate

4   number of shifts worked by all Class Members during the Class Period, and the total

5   number of pay periods worked by all Class Members during the Class Period.  Plaintiff's

6   Counsel also interviewed Class Members to determine the extent and frequency of

7   Labor Code violations and to learn more about their day-to-day circumstances giving

8   rise to the alleged violations.  (Perez Decl. ¶ 4.)

9       Overall, Plaintiff's Counsel performed an extensive investigation into the claims

10  at issue, which included:  (1) determining Ms. Nunnally's suitability as a putative class

11  representative, through interviews, a background investigation, and analysis of her

12  employment files and related records; (2) researching wage-and-hour class actions

13  involving similar claims; (3) engaging in the discovery process (i.e., propounding

14  interrogatories and document requests, and reviewing documents produced by

15  Defendant); (4) interviewing putative Class Members to acquire information about

16  potential claims, identify additional witnesses, obtain documents, solicit testimony in

17  support of Plaintiff's anticipated Motion for Class Certification; (5) obtaining and

18  analyzing Defendant's wage-and-hour policies and procedures; (6) researching the latest

19  case law developments bearing on the theories of liability; (7) researching settlements in

20  similar cases; (8) conducting discounted valuation analyses of claims; (9) drafting the

21  mediation brief and participating in mediation; (10) negotiating the terms of this

22  Settlement; (11) finalizing the Joint Stipulation of Class Action Settlement and Release;

23  and (12) and drafting preliminary and final approval papers.  The sizeable document and

24  data exchanges allowed Plaintiff's Counsel to assess the strengths and weaknesses of the

25  claims against Defendant and the benefits of the proposed Settlement.  (Perez Decl. ¶ 5.)

26      On April 18, 2016, Plaintiff filed a Stipulation and Order for Leave to File a First

27  Amended Complaint; the Court entered the order the next day.  The FAC was deemed

28  filed and served as of April 19, 2016.  In addition to other changes, the FAC added a

tenth cause of action for violations of the Fair Labor Standards Act ("FLSA") (29 U.S.C. section 201, *et seq.*).  On May 6, 2016, this action was removed to the Central District of California.  (Perez Decl. ¶ 6.)

### B.    The Parties Settled At Mediation

Prior to removal, the Parties participated in two mediations with Mark Rudy, a respected mediator of wage and hour class actions.  Under Mr. Rudy's guidance, the Parties came to an agreement on the principal terms of a class action settlement.  The parties spent the ensuing months memorializing the complete and final terms of the Parties' settlement, which are now set forth in the Joint Stipulation of Class Action Settlement and Release.  (Perez Decl., Exhibit 1.)  At all times, the Parties' negotiations were adversarial and non-collusive.  The Settlement therefore constitutes a fair, adequate, and reasonable compromise of the claims at issue.  (*Id.* at ¶ 7.)

### C.    The Proposed Settlement Fully Resolves Plaintiff's Claims

#### 1.    Composition of the Settlement Class

The proposed Settlement Class consists of all persons who worked for Defendant in a California "Dave & Buster's" restaurant as a server at any time during the period from August 2, 2009 until the date of Preliminary Approval.  (Settlement Agreement ¶ 8.)

#### 2.    Settlement Consideration

Plaintiff and Defendant have agreed to settle the underlying class claims in exchange for the Class Settlement Amount of $2,100,000.  The Class Settlement Amount includes:  (1) settlement payments to Class Members; (2) $700,000 in attorneys' fees and $25,000 in litigation costs/expenses to Plaintiff's Counsel; (3) a $7,500 payment to the LWDA; (4) Claims Administration Costs of up to $40,000; and (5) a Class Representative Enhancement Payment of $10,000 to Cherish Nunnally for her services on behalf of the Settlement Class.  (Settlement Agreement ¶¶ 2, 6, 11, 16, 17.)

Subject to the Court approving Attorneys' Fees and Costs, the payment to the

LWDA, Claims Administration Costs, and the Class Representative Enhancement Payment, the Net Settlement Amount will be available for distribution to Class Members who timely submit a Claim Form.  Each Participating Class Member's share of the settlement will be proportional to the total number of weeks he or she worked during the Class Period.  (Settlement Agreement ¶ 38.)

The number of weeks worked will be determined from Defendant's records, although Class Members who believe the records are in error will have an opportunity to challenge those records.  (*Id.* at ¶ 45.)  If, based on the number of timely and valid Claims Forms submitted, the total claimed Individual Settlement Payments would equal less than 55% of the Net Settlement Amount, the Claims Administrator shall proportionately increase the Individual Settlement Payment for each Participating Class Member so that the amount actually distributed to Participating Class Members shall equal 55% of the Net Settlement Amount.  (Settlement Agreement ¶¶ 17, 38(c).)

Given that there are approximately 2,350 Class Members, the average net recovery is approximately $560.  This average net recovery is comparable to, and in many cases greater than, other wage and hour class action settlements approved by California courts.  *See*, *e.g.*, *Aqui v. Sutton Foundation, Inc.*, Case No. 30-2008-00180062 (Orange County Super. Ct.) (average net recovery of approximately $445); *Badami v. Grassroots Campaigns, Inc.*, Case No. C 07-03465 JSW (N.D. Cal. Sept. 15, 2008) (average net recovery of approximately $195); *Sandoval v. Nissho of Cal., Inc.*, Case No. 37-2009-00091861 (San Diego County Super. Ct.) (average net recovery of approximately $145); *Fukuchi v. Pizza Hut*, Case No. BC302589 (L.A. County Super. Ct.) (average net recovery of approximately $120); *Contreras v. United Food Group, LLC*, Case No. BC389253 (L.A. County Super. Ct.) (average net recovery of approximately $120); *Ressler v. Federated Department Stores, Inc.*, Case No. BC335018 (L.A. County Super. Ct.) (average net recovery of approximately $90); *Doty v. Costco Wholesale Corp.*, Case No. CV05-3241 FMC-JWJx (C.D. Cal. May 14, 2007) (average net recovery of approximately $65); *Sorenson v. PetSmart, Inc.*, Case No. 2:06-

1  CV-02674-JAM-DAD (E.D. Cal.) (average net recovery of approximately $60); *Lim v.*
2  *Victoria's Secret Stores, Inc.*, Case No. 04CC00213 (Orange County Super. Ct.)
3  (average net recovery of approximately $35); and *Gomez v. Amadeus Salon, Inc.*, Case
4  No. BC392297 (L.A. Super. Ct.) (average net recovery of approximately $20).

5  ### 3.    The Settlement Reasonably Provides for a Partial Reversion
6  ### and a Claims Process

7  The Settlement reasonably provides that all unclaimed funds above a 55%
8  minimum guaranteed payment to Participating Class Members will revert to Defendant.
9  Parties to a class action settlement have broad flexibility to determine the final
10  distribution of any part of a settlement fund remaining after all claims and reimbursable
11  costs, fees, and expenses have been paid.  *See* Alba Conte & Herbert B. Newberg,
12  *Newberg On Class Actions*, § 10:15 (4th ed. 2002) ("In a settlement context, subject to
13  court approval, counsel for the parties have great flexibility in negotiating an agreement
14  concerning how any unclaimed balance of an aggregate class recovery should be
15  distributed.  The parties may agree that any surplus funds revert to the defendant . . . .").

16  Accordingly, the law permits settling parties to stipulate that residual, unclaimed
17  funds may revert to defendants.  As discussed in *Newberg*, there are several reasons
18  which support returning unclaimed funds to the defendant:

19    First, in some situations, the settlement's funds (even a judgment)
20    may be conceptualized as the defendant's property until the class
      claims it. As such, a reversion approach respects these property
21    rights. Second, as a practical matter, a reversionary fund may make
      sense when the total amount of the plaintiffs' damages is difficult to
22    assess and hence the quantity of money in the common fund is more
      guesswork than an accurate assessment of actual damages. Third,
      and perhaps most importantly, a defendant is more likely to settle if
23    the unclaimed funds revert to it.

24  *See Newberg* § 12:29 (5th ed.)

25  In addition to the policy-based justifications for reversions, reversions are also
26  pragmatic in that they facilitate settlement in cases where defendants may be willing to

27
28

---

settle, but only if all class members submit claims as a condition of payment,[2] and only if

defendants retain an interest in the unclaimed residue.  The Fifth Circuit Court of

Appeals justified this rationale in *Klier v. Elf Atochem North America, Inc.*, 658 F.3d

468 (5th Cir. 2011):

> In the ordinary case, to the extent that something must be done with
> unclaimed funds, the superior approach is to return leftover
> settlement funds to the defendant. This corrects the parties' mutual
> mistake as to the amount required to satisfy class members' claims.
> Other uses of the funds—a pro rata distribution to other class
> members, an escheat to the government, a bonus to class counsel,
> and a cy pres distribution—all result in charging the defendant an
> amount greater than the harm it bargained to settle. Our adversarial
> system should not effectuate transfers of funds from defendants
> beyond what they owe to the parties in judgments or settlements.

*Id.* at 482.

The above rationale is particularly relevant to this settlement, as Plaintiff would

not have been able to secure a $2,100,000 fund without a reversion clause.  Indeed,

Plaintiff and Defendant's respective valuations of the claims were so divergent as to

require—per the recommendation of the mediator, Mr. Mark Rudy—a reversion in

order to bridge the gap.  Mr. Rudy has been recognized as one of the best mediators in

the State of California by the Daily Journal, and was awarded the 2013 Mediator of the

Year by the San Francisco Trial Lawyers Association.  The appropriateness of a

reversion is thus "bolstered by the fact that the Settlement was negotiated with the aid of

. . . an experienced mediator[.]"  *Gallucci v. Gonzales*, 603 Fed. Appx. 533 (9th Cir.

---

[2] This is owing to defendants' position, albeit contested, that relatively few class members were harmed by their conduct or have a true interest in the lawsuit.  *See Farinella v. PayPal, Inc.*, 611 F. Supp. 2d 250, 260 (E.D.N.Y. 2009) ("The requirement that claimants return claim forms that affirm their reliance on the language of the User Agreement is an appropriate screening mechanism to ensure that only persons who relied upon the representations of PayPal at issue are entitled to recover from the Settlement Fund"); *In re WorldCom, Inc. Sec. Litig.*, No. 02-CIV-3288-DLC, 2004 U.S. Dist. LEXIS 22992, at *44 (S.D.N.Y. Nov. 12, 2004) (the claim form asking class members "to document their trading losses and to sign the proof of claim form under penalty of perjury" was "important in helping to insure that the settlement fund is distributed to class members who deserve to recover from the fund"); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 593-94 (N.D. Ill. 2011) (the claims process is useful even when all class members are ascertainable, as it gives class members the ability to choose not to "receiv[e] a payment that they feel they do not deserve").

1   2015).

2        The reversion clause thus allowed the parties to increase the total potential

3   amount available for Class Members to claim, and in turn, assures that each individual

4   Class Member's payment is larger than the amount he or she might otherwise have

5   received had the settlement been for a lesser non-reversionary amount.  In this regard, it

6   must be underscored that the reversion affects only what Defendant will pay in aggregate

7   to the Settlement Class—not what Class Members who file claims will receive.  *See*

8   *Kronfield v. Transworld Airlines, Inc.*, No. 83 CIV. 8641 (KMV), 1989 WL 140341, at

9   *1 (S.D.N.Y. Nov. 13, 1989) (the United States District Court for the Southern District

10  of New York has held that "recapture clauses are common in class action settlements

11  and are not inherently unfair; the provision affects only what defendants will pay and not

12  what class members who file claims will receive").

13        California's federal district courts have repeatedly approved wage and hour

14  settlements with reversions.  *See Quintana v. Claire's Boutiques, Inc.*, Case No. 5:13-cv-

15  00368-PSG (N.D. Cal. Dec. 1, 2015; Magistrate Judge Paul Singh Grewal) (approving

16  settlement that provided for a reversion of up to 40% of the net settlement fund); *Andres*

17  *v. Laboratory Corp. of America*, Case No. 2:13-cv-08773-GW-DTB (C.D. Cal. October

18  30, 2015) (approving settlement that allowed for partial reversion of unclaimed funds to

19  the Laboratory Corp. of America); *Davis v. Brown Shoe Co., Inc.*, Case No. 1:13-cv-

20  01211-LJO-BAM (E.D. Cal. Nov. 23, 2015; Judge Lawrence J. O'Neill) (approving a

21  settlement that provided for a reversion of up to ≈ 60% of the net settlement fund);

22  *Hightower v. JPMorgan Chase Bank, N.A.*, Case No. 2:11-cv-01802-PSG-PLA (C.D.

23  Cal. July 2, 2015; Judge Philip S. Gutierrez) (approving settlement that provided for a

24  reversion of up to 35% of the net settlement fund); *Hicks v. Toys R Us, Inc.*, Case No.

25  2:13-cv-01302-DSF-JCG (C.D. Cal. September 2, 2014) (approving settlement that

26  provided for a reversion of up to 45% of the net settlement fund); *Schiller v. David's*

27  *Bridal, Inc.*, Case No. 1:10-cv-00616-AWI-SKO, 2012 U.S. Dist. LEXIS 80776 (E.D.

28  Cal. June 28, 2012; Chief Judge Anthony W. Ishii) (approving settlement that provided

for a reversion of up to 45% of the net settlement fund); *Mendez v. Tween Brands, Inc.*, Case No. 2:10-cv-00072-MCE-DAD (E.D. Cal. Aug. 8, 2011; Judge Morrison C. England, Jr.) (approving settlement that provided for a reversion of up to 50% of the net settlement fund); *Enabnit v. Petsmart, Inc.*, No. 2:07-cv-00165-JAM-DAD (E.D. Cal. April 23, 2009) (approving settlement that provided for a reversion of up to 70% of the net settlement fund); *Lewis v. Starbucks*, Case No. 2:07-cv-00490-MCE-DAD (E.D. Cal. Dec. 10, 2008; Judge Morrison C. England, Jr.) (approving settlement that provided for a reversion of up to 75% of the net settlement fund).

By facilitating settlement in circumstances where settlement might otherwise not be possible—an outcome favored by California public policy—reversions are among the various types of settlement terms that have been approved by California courts when warranted by the circumstances of each case. *Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794, 1801 (1996) (the focus is on whether "the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."); *Neary v. Regents of University of California*, 3 Cal. 4th 273, 277-78 (1992) ("Without [settlements] our system of civil adjudication would quickly break down"); *In re Microsoft I-V Cases*, 135 Cal. App. 4th at n4 ("Public policy generally favors the compromise of complex class action litigation").

### 4.    Release by the Settlement Class

In exchange for the Class Settlement Amount, Plaintiff and Class Members who do not opt out will agree to release the Released Claims. (Settlement Agreement ¶¶ 24, 50.) The Released Claims are those that accrued during the period from August 2, 2009 to the date of Preliminary Approval. (*Id.*)

## III.    ARGUMENT

### A.    Conditional Class Certification Is Appropriate for Settlement Purposes

A party seeking to certify a class must demonstrate that it has met all four

requirements under Federal Rule of Civil Procedure 23(a),[3] and at least one of the requirements of Rule 23(b)—in this case, Rule 23(b)(3). *See Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1186 (9th Cir. 2001).  Where, as here, workplace violations are at issue, "the key question for class certification is whether there is a consistent employer practice [or policy] that could be a basis for consistent liability." *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D. Cal. 2008).  Indeed, class certification is proper when the plaintiff provides substantial evidence of a company-wide policy on which her theory of liability is based, even if in practice that policy's implementation varied. *See In re Taco Bell Wage & Hour Actions*, 2012 U.S. Dist. LEXIS 168219, at *19 (E.D. Cal. 2012) (certifying meal period class where uniform policy was undisputed but defendant argued "as a matter of practice, the policy is carried out in a variety of ways") (*aff'd de novo*, 2013 U.S. Dist. LEXIS 380 (E.D. Cal. 2013)).

Moreover, "it is the plaintiff's theory that matters at the class certification stage, not whether the theory will ultimately succeed on the merits." *Alonzo v. Maximus, Inc.*, 275 F.R.D. 513, 525 (C.D. Cal. 2011) (citations omitted).  Indeed, the Supreme Court in *Wal-Mart Stores, Inc. v. Dukes* repeatedly stated that Rule 23's commonality analysis depends on whether Dukes' "basic theory of their case" as to Wal-Mart's alleged policy and practice of discriminatory treatment of women "can be proved on a classwide basis." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2548, 2554-55 (2011).  Moreover, the fact that class members may have been affected by a defendants' uniform policies/practices to varying degrees or have suffered varying damages *is not a bar* to certification. *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013)  ("the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3).")

---

[3] Rule 23(a) provides that, to certify a class, a Plaintiff must demonstrate that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

**B.      Plaintiff's Claims Present Predominant Questions of Law and Fact**

For a class to be certified, there must be questions of law or fact common to the class.  Fed. R. Civ. P. 23(a)(2).  Rule 23(b)(3) also requires that the common questions of law or fact predominate over any individual questions.  Thus, the Rule 23(a)(2) commonality inquiry and the Rule 23(b)(3) predominance inquiry overlap.  *In re Autozone, Inc.*, 289 F.R.D. 526, 533 n.10 (N.D. Cal. 2012).  Here, each of Plaintiff's theories of liability presents common legal and factual questions that predominate over any individual issues.

**1.      Plaintiff's Wage Statement Claim Presents Predominant Common Issues of Law and Fact**

Plaintiff alleges that Defendant improperly itemized Class Members' wage statements by failing to list all applicable hourly rates, such as the overtime rate and gross wages earned by the employee during the pay period, in violation of Labor Code section 226(a).  Labor Code section 226(a) requires employers to provide every employee with a written wage statement that lists, in relevant part:  "(1) gross wages earned . . . and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee[.]"  If an employer knowingly and intentionally fails to provide these itemized statements to an employee, it must pay the employee damages as set forth in the statute.  Lab. Code § 226(e).

Whether Defendant's wage statements were properly formatted is an inherently common, certifiable question.  Similar wage statement claims have been certified.  *See*, *e.g.*, *Ortega v. J.B. Hunt Transp., Inc.*, 258 F.R.D. 361, 374 (C.D. Cal. 2009) ("Accordingly, particularly in light of the fact that the pay stubs and settlement summaries provided to California drivers are standardized documents, the Court finds that Plaintiffs have demonstrated that certification of their pay stub claim is appropriate."); *see also*, *e.g.*, *Espinoza v. Domino's Pizza, LLC*, 2009 U.S. Dist. LEXIS 31093 (C.D. Cal. Feb. 18, 2009) (certifying wage statement subclass); *see also*, *e.g.*,

1  *Wang v. Chinese Daily News*, 231 F.R.D. 602 (C.D. Cal. 2005) (certifying California

2  wage statement class); *Jaimez v. Daiohs USA, Inc.*, 181 Cal. App. 4th 1286, 1306 (Cal.

3  App. 2d Dist. 2010) (reversing and ordering certification of meal period, rest period, and

4  wage statement subclasses).

### 2.   Plaintiff's Rest Period Claim Presents Predominant Common Issues of Law and Fact

Plaintiff alleges that Defendant's written rest period policy authorized rest periods only for every four hours worked, instead of every "major fraction" of four, in violation of the Labor Code and Wage Orders.  Pursuant to Wage Order No. 7:

> Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 ½) hours. Authorized rest period time shall be counted, as hours worked, for which there shall be no deduction from wages.

As explained in *Brinker Rest. Corp. v. Super. Ct.*, 53 Cal. 4th 1004, 1029 (2012), "Employees are entitled to 10 minutes' rest for shifts from three and one-half to six hours in length, 20 minutes for shifts of more than six hours up to 10 hours, 30 minutes for shifts of more than 10 hours up to 14 hours, and so on."  If the employer fails to provide an employee with rest periods in accordance with California law—e.g. failing to authorize and permit two rest breaks during an eight-hour shift—the employer must pay the employee a full additional hour of compensation.  8 Cal. Code of Regs. § 11050, subd. 12(B); Cal. Lab. Code § 226.7(b).

Common questions predominate as to Plaintiff's rest period claim because Defendant's rest break period creates the following class-wide issues:

- Whether Defendant violates California law by failing to authorize or permit a rest period for shifts between 3 ½ and 4 hours;

- Whether Defendant violates California law by failing to authorize or permit a second rest period for shifts between 6 and 8 hours;

- Whether Defendant's uniform written rest beak policy violates California law

1    by failing to give full effect to Wage Order No. 5.

2        The pertinent authorities support the contention that common questions of law

3    and fact predominate.  Foremost, in *Brinker*, the California Supreme Court held that the

4    trial court properly certified a rest period subclass in light of the evidence submitted

5    regarding a common, uniform non-compliant rest period policy.  *Brinker*, 53 Cal. 4th at

6    1033.  The California Supreme Court emphasized that "[c]laims alleging that uniform

7    policy consistently applied to a group of employees is in violation of the wage and hour

8    laws are of the sort routinely, and properly, found suitable for class treatment."  *Id.* at

9    1033 (*citing Jaimez v. Daiohs USA, Inc.*, 181 Cal. App. 4th 1286, 1299-1305 (2010);

10   *Ghazaryan v. Diva Limousine, Ltd.*, 169 Cal. App. 4th 1524, 1533-38 (2008); *Bufil v.*

11   *Dollar Financial Group, Inc.*, 162 Cal. App. 4th 1193, 1205-08 (2008)).

12       Several California district courts have already applied *Brinker* and certified

13   similar rest period claims.  *See In re AutoZone, Inc.*, 2012 U.S. Dist. LEXIS 181597

14   (N.D. Cal. Dec. 12, 2012); *Schulz v. QualServ.*, No. 09-CV-17, 2012 U.S. Dist. LEXIS

15   58561, *2 (S.D. Cal. Apr. 26, 2012), *Bradley v. Networkers International, LLC*, 211 Cal.

16   App. 4th 1129 (2012); *In Re Taco Bell Wage And Hour Actions*, No. 1:07-cv-01314-

17   SAB (E.D. Cal. Dec. 16, 2014); *Romo v. GMRI, Inc.*, No. 5:12-cv-00715-JLQ-SP (C.D.

18   Cal. Aug. 13, 2014).

19       Accordingly, the Court should find that common issues of fact and law

20   predominate as to the rest period claim.

21       **3.    Plaintiff's Meal Period Claim Presents Predominant Common**

22            **Issues of Law and Fact**

23       Plaintiff alleges that Defendant failed to relieve its Servers of all duties during

24   their meal periods, and, in fact, incentivized them to remain on the premises and under

25   its control.  Specifically, Defendant offered highly-discounted meals (equal to 50%) to

26   its employees during their work shifts.  Plaintiff further alleges that to receive this

27   employment benefit, Class Members were required to remain on the premises and eat

28   their meal on site either in the kitchen or nearby the kitchen.  Plaintiff therefore alleges

1   that because Defendant retained control of its employees during their meal periods and

2   failed to relieve of all duties during their meal break, Class Members did not receive a

3   compliant duty free meal period. *Bono Enterprises, Inc. v. Bradshaw*, 32 Cal. App. 4th

4   968, 979 (1995) (finding that an employee who must remain on her employer's premises

5   during her meal break is not relieved of all duties).

6   　　　Under California law, an employer is liable for failing to provide meal periods if

7   the employer in any way discouraged employees from taking their required meal

8   periods. As the California Supreme Court held in *Brinker, Ct.*, 53 Cal. 4th at 1040:

9   　　　　An employer's duty with respect to meal breaks under both section
    　　　　512, subdivision (a) and Wage Order No. [7] is an obligation to
10  　　　　provide a meal period to its employees. The employer satisfies this
    　　　　obligation if it relieves its employees of all duty, relinquishes control
11  　　　　over their activities and permits them a reasonable opportunity to
    　　　　take an uninterrupted 30-minute break, and **does not impede or**
12  　　　　**discourage them from doing so.**

13  (emphasis added); *see also Cicairos v. Summit Logistics*, Inc., 133 Cal. App. 4th 949,

14  962-63 (2005); *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1104 (2007)

15  ("An employee forced to forgo his or her meal period ... loses a benefit to which the law

16  entitles him or her.")

17  　　　In *Brinker,* the California Supreme Court held that a meal period violation occurs

18  when an employer pressures, encourages, or incentivizes an employee to skip, or take

19  short, meal periods. Indeed, "the wage orders and governing statute do not countenance

20  an employer's exerting coercion against the taking of, creating incentives to forego, or

21  otherwise encouraging the skipping of legally protected breaks." *Id.* at 1036.

22  　　　Plaintiff's theory of meal period liability yields the following predominant,

23  common questions of fact and law:

24  　　　　•　Did Defendant maintain and implement a uniform meal period
    　　　　　policy that, *in practice*, did not provide meal periods?
25
    　　　　•　Did Defendant fail to pay premiums whenever it failed to provide
26  　　　　　meal periods?

27  　　　Common evidence—in the form of Defendant's written policies, corporate

28  representative testimony, and Class Member declarations—would answer the

1  predominant common questions and would show that the combined effect of

2  Defendant's policies and practices was that they did not provide Class Members with

3  meal periods.

4      The certifiability of this theory of liability has been confirmed by post-*Brinker*

5  decisions.  *See e.g. Paige v. Consumer Programs, Inc.*, Order Granting in Part Plaintiffs'

6  Amended Motion for Class Certification, Case No. CV-07-2498-MWF (RCx), Dkt. No.

7  75 (C.D. Cal. July 16, 2012).  In *Paige*, the district court held that:

8      "The California Supreme Court in *Brinker* allowed for the
       possibility that meal and rest break claims could predominately
9      feature questions of general interest. The *Brinker* Court ultimately
       held that, under California law, 'an employer's obligation is to
10     relieve its employee of all duty, with the employee thereafter at
       liberty to use the meal period for whatever purpose he or she
11     desires.' *Brinker*, 53 Cal. 4th at 1017.  The employer's duty is not to
       ensure that no work takes place during a given period, but to provide
12     what is a substantively meaningful break."

13  *Id.* at 2-3.

14      In *Paige*, plaintiffs' meal period claims "alleged the existence of various uniform

15  policies that were consistently applied to purported class members, effectively denying

16  them the ability to take sufficient rest and meal breaks."  *Id.* at 3.  The *Paige* court found

17  that "taken together, these policies allegedly resulted in working conditions, consistent

18  across [defendant's] establishments, in which [defendant] did not 'relinquish control' of

19  purported class members." *Id.*  The court in *Paige* granted certification based on a these

20  uniform meal and rest break policies.  *Id.* at 4.

21      Similarly, in *Ortega v. J.B. Hunt Transport Inc.*, Order Denying Defendant's

22  Motion for Decertification of the Class, Case No. CV 07-8336-MWF (FMOx), Dkt. No.

23  77 (C.D. Cal. Dec. 18, 2012), the district court denied defendant's motion for

24  decertification finding:

25     Although the court in *Brinker* indeed held that an employer's
       obligation to provide a break period does not include an obligation to
26     ensure the break is actually taken, this conclusion does not
       necessarily preclude a finding of predominance or commonality.
27     *Brinker*, 53 Cal. 4th at 1017. Rather, the *Brinker* court explained that
       where it is alleged with factual support that common, uniform
28     policies consistently applied resulted in the purported violations,

class treatment may be appropriate. *Id.* at 1033. Additionally, the Brinker court observed that an "employer may not undermine a formal policy of providing meal breaks by pressuring employees to perform their duties in ways that omit breaks." *Id.* at 1040. Because the plaintiffs in *Brinker* alleged such a uniform policy with regard to rest breaks, the *Brinker* court determined that rest break claims could proceed on a class-wide basis. *Id.* at 1033."

The *Ortega* court went on to state that even under the rigorous commonality analysis required under *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541 (2011), the question whether defendant's common policies failed to provide rest breaks is common to all potential class members. *Id.* at 4.

This case falls squarely in line with the *Paige* and *Ortega* decisions. Here, Plaintiff alleges that uniform policies and practices, which when taken together, resulted in non-compliant meal periods. Because the impact of these policies and practices predominantly features common questions of general interest, conditional class certification for settlement purposes is appropriate.

### 4. Plaintiff's Off-the-Clock Claim Presents Predominant Common Issues of Law and Fact

Plaintiff alleges that Defendant routinely required its employees to remain available to work through meal periods, and also required employees to complete various side tasks before and after their shifts off-the-clock. Evidence of "a systematic company policy to pressure or require employees to work off-the-clock," renders the off-the-clock claim suitable for class treatment. *Brinker*, 53 Cal. 4th at 1051 (explaining that common issues predominate where the plaintiff "presented substantial evidence of a systematic company policy to pressure or require employees to work off-the-clock"). Importantly, it is not necessary for Plaintiff to show that Defendant had a formal written policy requiring class members to work off-the-clock; a showing of a common practice suffices for the Court to grant certification. Thus, for instance, in *Arredondo v. Delano Farms Co.*, 2014 U.S. Dist. LEXIS 22658 (E.D. Cal. Feb. 20, 2014), the plaintiffs submitted declarations from putative class members stating that they were required to perform off-the-clock work before and after their scheduled shifts. The court rejected

1  the defendant's reliance on its written policies prohibiting off-the-clock work the

2  "'stringent policies' adopted by defendants may not have been followed as defendants

3  attest." *Id.* at *44.  *See also Wilks v. Pep Boys*, 2006 U.S. Dist. LEXIS 69537 (M.D.

4  Tenn. Sept. 26, 2006) (off-the-clock class conditionally certified based on nation-wide,

5  unwritten policy of not paying for all hours worked which was contrary to the

6  defendant's formal written policy prohibiting off-the-clock work).

7      Accordingly, the Court should find that common issues of fact and law

8  predominate as to the off-the-clock claim.

9      **5.   Plaintiff's Business Expense Reimbursement Claim Presents**

10     **Predominant Common Issues of Law and Fact**

11     Plaintiff alleges that Defendant required its employees to use their personal

12 vehicles to travel to various corporate "street team" events and promotions throughout

13 their employment, but failed to reimburse Class Members for mileage.  Labor Code

14 section 2802(a) provides: "An employer shall indemnify his or her employee for all

15 necessary expenditures or losses incurred by the employee in direct consequence of the

16 discharge of his or her duties[.]"

17     District courts throughout this circuit have found that commonality is met when,

18 as here, the proposed class of plaintiffs asserts that an employer adopted a policy of not

19 reimbursing its employees' necessary business expenses in violation of Cal. Bus. Code §

20 2802. *See*, *e.g.*, *Schulz v. QualxServ, LLC*, Nos. 9–CV–17–AJB, 9–CV–2081, 2012 WL

21 1439066, at *3 (S.D.Cal. Apr. 26, 2012) (Plaintiffs meet commonality "because they

22 challenge uniform policies and systemic practices that apply to this class of employees");

23 *Drake v. Morgan Stanley & Co., Inc.*, CV 09–6467 ODW RCX, 2010 WL 2175819, at

24 *4 (C.D.Cal. Apr.30, 2010) (determining whether defendant's "'company-wide

25 corporate practices and policies' violate California law is sufficient to satisfy Rule

26 23(a)(2)"); *Stuart v. Radioshack Corp.*, C–07–4499 EMC, 2009 WL 281941, at *7

27 (N.D.Cal. Feb.5, 2009) (noting that uniform policy on reimbursement for business trips

28 usually sufficient to satisfy commonality requirement) (*citing Parish v. Sheriff of Cook*

1  *County*, No. 07 4369, 2008 U.S. Dist. LEXIS 87140, at *8–9, 2008 WL 4812875 (N.D.
2  Ill. Oct. 24, 2008)).

3  **6.  Cherish Nunnally Will Adequately Represent the Interests of**
4  **the Proposed Settlement Class**

5  The final Rule 23(a) requirement asks whether "the representative parties will
6  fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This
7  requirement is satisfied if: (1) the proposed representative Plaintiff does not have a
8  conflict of interest with the proposed class, and (2) Plaintiff is represented by qualified
9  and competent counsel.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

10  The Rule 23(a) adequacy requirement is met here as Cherish Nunnally has and
11  will represent putative Class Members with a focus and zeal true to the fiduciary
12  obligation that she has undertaken.  Plaintiff's Counsel also satisfies the Rule 23(a)(4)
13  adequacy-of-counsel requirement.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020
14  (9th Cir. 1998) ("will the named plaintiffs and their counsel prosecute the action
15  vigorously on behalf of the class?").  The attorneys at Capstone Law have successfully
16  certified numerous class actions by way of contested motion in state and federal court,
17  and have negotiated settlements totaling over tens of millions of dollars on behalf of
18  hundreds of thousands of class members.  (*See* Perez Decl. ¶¶ 8-12.)

19  **7.  Class Settlement Is Superior to Other Available Means of**
20  **Resolution**

21  Resolving all Class Members' claims through a single class action is superior to a
22  series of individual lawsuits.  "From either a judicial or litigant viewpoint, there is no
23  advantage in individual members controlling the prosecution of separate actions.  There
24  would be less litigation or settlement leverage, significantly reduced resources and no
25  greater prospect for recovery."  *Hanlon*, 150 F.3d at 1023.  Indeed, the terms of the
26  Settlement negotiated on behalf of the Class demonstrates the advantages of a collective
27  bargaining and resolution process.

28  Addressing the allegations through a class action is superior to individual

1  litigation or any alternative methods that may exist. This action was filed precisely
2  because Plaintiff believed those alternatives, such as filing complaints with the LWDA,
3  would have proven ineffective in addressing the problem on a class-wide basis.
4  Additionally, although the value of the claims is not insignificant, the amount in
5  controversy is not nearly enough to incentivize individual action. *See Wolin v. Jaguar*
6  *Land Rover N. Am.*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an
7  individual basis would be dwarfed by the cost of litigating on an individual basis, this
8  [superiority] factor weighs in favor of class certification."). As the class action device
9  provides the superior means to effectively and efficiently resolve this controversy, and as
10  the other requirements of Rule 23 are each satisfied, certification of the Settlement Class
11  proposed by the Parties is appropriate.

      **C.**     **The Proposed Class Action Settlement Should Receive Preliminary Approval**

          **1.**    **Courts Review Class Action Settlements to Ensure That the Terms Are Fair, Adequate, and Reasonable**

16        Class action settlements must be approved by the court and notice of the
17  settlement must be provided to the class before the action can be dismissed. Fed. R. Civ.
18  P. 23(e)(1)(A). To protect absent class members' due process rights, approval of class
19  action settlements involves three steps:

20          1.     Preliminary approval of the proposed settlement, including (if the class has
21                 not already been certified) conditional certification of the class for
22                 settlement purposes;

23          2.     Notice to the class providing them an opportunity to exclude themselves;
24                 and

25          3.     A final fairness hearing concerning the fairness, adequacy, and
26                 reasonableness of the settlement.

27  *See* Fed. R. Civ. P. 23(e)(2); Manual for Complex Litigation § 21.632 (4th ed. 2004).

28        At preliminary approval, the Court first determines whether a class exists.

1   *Stanton v. Boeing Company*, 327 F.3d 938, 952 (9th Cir. 2003).  Then, the Court

2   evaluates whether the settlement is within the "range of reasonableness," and whether

3   notice to the class and the scheduling of a final approval hearing should be ordered.  *See*,

4   *generally*, 3 Conte & Newberg, *Newberg on Class Actions*, section 7.20 (4th ed. 2002)

5   § 11.25.  "Whether a settlement is fundamentally fair within the meaning of Rule 23(e)

6   is different from the question whether the settlement is perfect in the estimation of the

7   reviewing court."  *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).

8          The law favors the compromise and settlement of class action suits.  *See*

9   *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *see also Hanlon*

10  *v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (endorsing the trial court's

11  "proper deference to the private consensual decision of the parties" when approving a

12  settlement).  "Litigation settlements offer parties and their counsel relief from the

13  burdens and uncertainties inherent in trial. . . .  The economics of litigation are such that

14  pre-trial settlement may be more advantageous for both sides than expending the time

15  and resources inevitably consumed in the trial process."  *Franklin v. Kaypro*, 884 F.2d

16  1222, 1225 (9th Cir. 1989).  Thus, the Court must determine whether a settlement is

17  "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(1).

18         To make this determination at preliminary approval, the Court may consider

19  some or all of the following factors:  (i) the extent of discovery completed, and the stage

20  of proceedings; (ii) the strength of the Plaintiffs' case and the risk, expense, complexity

21  and likely duration of further litigation; (iii) the risk of maintaining class action status

22  throughout trial; the amount offered in settlement; and (iv) the experience and views of

23  counsel.  *See Stanton*, 327 F.3d at 959 (citing *Molski v. Gleich*, 318 F.3d 937, 953 (9th

24  Cir. 2003)).  "Under certain circumstances, one factor alone may prove determinative in

25  finding sufficient grounds for court approval."  *Nat'l Rural Telecom. Coop. v.*

26  *DIRECTV, Inc.*, 221 F.R.D. 523, 525-526 (C.D. Cal. 2004) (*citing Torrisi v. Tucson*

27  *Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993)).

28         At the preliminary approval stage, the Court need only review the Parties'

1  proposed settlement to determine whether it is within the permissible "range of possible

2  judicial approval" and thus, whether the notice to the class and the scheduling of the

3  formal fairness hearing is appropriate.  Newberg, § 11:25.

4          **2.      The Settlement Was Negotiated after Plaintiff's Counsel**

5                  **Conducted a Thorough Investigation of the Factual and Legal**

6                  **Issues**

7          As set forth in greater detail above, based on their analysis of documents

8  produced by Defendant (including policies manuals and a representative sample of time

9  and wage records), and information provided by Class Members during interviews,

10  Plaintiff's Counsel were able to realistically assess the value of Plaintiff's claims and

11  intelligently engage defense counsel in settlement discussions that resulted in the

12  proposed settlement now before the Court.  (Perez Decl. ¶¶ 4-7.)

13          By engaging in a thorough investigation and evaluation of Plaintiff's claims,

14  Plaintiff's Counsel can knowledgeably opine that the Settlement, for the consideration

15  and on the terms set forth in the Settlement Agreement, is fair, reasonable, and adequate,

16  and is in the best interests of Class Members in light of all known facts and

17  circumstances, including the risk of significant delay and uncertainty associated with

18  litigation and various defenses asserted by Defendant.

19          **3.      The Settlement Was Reached through Arm's-Length**

20                  **Bargaining in Which All Parties Were Represented by**

21                  **Experienced Counsel**

22          As discussed above, the Settlement is result of arm's-length negotiations.  The

23  Parties participated in mediation with Mark Rudy, a respected mediator of wage and

24  hour class actions.  Mr. Rudy helped to manage the Parties' expectations and provided a

25  useful, neutral analysis of the issues and risks to both sides.  *In re Apple Computer, Inc.*

26  *Derivative Litig.*, No. C 06-4128 JF (HRL), 2008 U.S. Dist. LEXIS 108195 (N.D. Cal.

27  Nov. 5, 2008) (mediator's participation weighs considerably against any inference of a

28  collusive settlement), *In re Atmel Corp. Derivative Litig.*, No. C 06-4592 JF (HRL),

1  2010 U.S. Dist. LEXIS 145551 (N.D. Cal. June 25, 2008) (same); *D'Amato v. Deutsche*

2  *Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in pre-certification

3  settlement negotiations helps to ensure that the proceedings were free of collusion and

4  undue pressure.")  At all times, the Parties' negotiations were adversarial and non-

5  collusive.

6      The Parties were represented by experienced class action counsel throughout the

7  negotiations resulting in this Settlement.  Plaintiff was represented by Capstone Law

8  APC ("Capstone").  Capstone, which seeks appointment as Class Counsel, employs

9  seasoned class action attorneys who regularly litigate wage and hour claims through

10  certification and on the merits, and have considerable experience settling wage and hour

11  class actions.  (Perez Decl. ¶¶ 8-12.)

12      Defendant was represented by Littler Mendelson, P.C., which is one of

13  California's leading defense firms.

14          **4.      The Proposed Settlement Is Reasonable Given the Strengths of**

15                  **Plaintiff's Claims and the Risks and Expense of Litigation**

16      In advance of mediation, Plaintiff evaluated the claims in light of the risks of

17  continued litigation in order to determine a reasonable range of class relief.  Although

18  Plaintiff believes the class claims are strong, Plaintiff also recognizes that if the litigation

19  had continued, she may have encountered significant legal and factual hurdles that could

20  have prevented the Class from obtaining any recovery.  To be sure, a number of cases

21  have found wage and hours actions to be especially amenable to class resolution.[4]

22

23  _____

    [4] *See Brinker Restaurant Corp. v. Super. Ct.*, 53 Cal. 4th 1004, 1033 (2012)
    ("Claims alleging that a uniform policy consistently applied to a group of employees is
24  in violation of the wage and hour laws are of the sort routinely, and properly, found
    suitable for class treatment . . .  The theory of liability – that [the employer] has a
25  uniform policy, and that that policy, measured against wage order requirements,
    allegedly violates the law - is by its nature a common question eminently suited for class
26  treatment.").  Litigation of wage and hour claims on class-wide bases (1) encourages the
    vigorous enforcement of wage laws (*Smith v. Super. Ct.*, 39 Cal. 4th 77, 82 (2006)); (2)
27  "eliminates the possibility of repetitious litigation" (*Sav-on Drug Stores, Inc. v. Super.
    Ct. (Rocher)*, 34 Cal. 4th 319, 340 (2004)); (3) affords small claimants a method of
28  obtaining redress (*id.*); (4) "deter[s] and redress[es] alleged wrongdoing" (*Jaimez v.*

However, some courts have gone the other way, finding that some of the very claims at issue here—meal period, rest period, and off-the-clock violations—were not suitable for class adjudication because they raised too many individualized issues. *See Duran v. U.S. Bank National Association*, 59 Cal. 4th 1, 31 (2014) (reversing a verdict from a class trial); *Augustus v. ABM Security Services, Inc.*, 233 Cal. App. 4th 1065 (2014) (finding that the trial court erred in granting summary adjudication and summary judgment to security guards who were on call during rest breaks because neither the Labor Code nor the applicable wage order mandated that employees be relieved of all duties during rest breaks); *Ali v. U.S.A. Cab Ltd.*, 176 Cal. App. 4th 1333, 1341 (2009) (affirming denial of certification because employees' declarations attesting to having taken meal and rest breaks demonstrated that individualized inquiries were required to show harm); *Campbell v. Best Buy Stores, L.P.*, 2013 U.S. Dist. LEXIS 137792, at *30-41 (C.D. Cal. Sept. 20, 2013) (following *Brinker* and denying certification of proposed off-the-clock and rest and meal break classes due to lack of uniform policy); *Jimenez v. Allstate Ins. Co.*, 2012 U.S. Dist. LEXIS 65328 (C.D. Cal. Apr. 18, 2012) (denying motion to certify meal and rest break classes based on employer's practice of understaffing and overworking employees); *Gonzalez v. Officemax N. Am.*, 2012 U.S. Dist. LEXIS 163853 (C.D. Cal. Nov. 5, 2012) (same); *Brown v. Fed. Express Corp.,* 249 F.R.D. 580, 587-88 (C.D. Cal. 2008) (denying certification of driver meal and rest period claims based on the predominance of individual issues); *Kenny v. Supercuts, Inc.*, 252 F.R.D. 641, 645 (N.D. Cal. 2008) (denying certification on meal periods claim); *Blackwell v.*

---

*Daiohs USA, Inc.*, 181 Cal. App. 4th 1286, 1298 (2010)); (5) "avoid[s] windfalls to defendants" (*Brinker*, 53 Cal. 4th at 1054); (6) avoids "inconsistent or varying adjudications" (*Aguiar v. Cintas Corp. No. 2*, 144 Cal. App. 4th 121, 129 (2006)); and (7) alleviates the concerns of employees about retaliation (*Gentry v. Super. Ct. (Circuit City Stores)*, 42 Cal. 4th 443, 462-63 (2007); *Jaimez v. Daiohs USA, Inc.*, 181 Cal. App. 4th at 1308). These policies are so strongly favored that "class certifications should not be denied [in wage and hour cases] so long as the absent class members' rights are adequately protected." *Richmond v. Dart Industries, Inc.*, 29 Cal. 3d 462, 474 (1981); *see also Sav-On, supra*, 34 Cal. 4th 319 (upholding certification of an overtime class action based on a showing that all plaintiffs performed jobs that were highly standardized, and as a result, class members performed essentially the same tasks, most of which were non-exempt as a matter of law).

1  *Skywest Airlines, Inc.*, 245 F.R.D. 453, 467-68 (S.D. Cal. 2007) (declining to certify

2  class action because individual issues predominated when different employee stations

3  provided different practices with respect to meal periods).

4        Some courts have denied certification even when an employer's policies are

5  unlawful on their face.  For instance, in *Ordonez v. Radio Shack, Inc.*, 2013 U.S. Dist.

6  LEXIS 7868, *35-41 (C.D. Cal. Jan. 17, 2013), the court denied certification even

7  though the plaintiff submitted evidence of a facially unlawful policy regarding rest

8  breaks.  The *Ordonez* court concluded that the predominance and superiority elements

9  were not met based on the employer's presentation of anecdotal evidence of lawful

10  compliance notwithstanding the unlawful policy.  *Id.* at *38-40.

11        As the above examples illustrate, the prospect of certifying a wage and hour

12  action is always uncertain, and the risk of being denied class certification militates in

13  favor of settlement.   A denial of class certification effectively forecloses continued

14  litigation, as neither the individual nor his or her attorney will have any incentive to

15  proceed with an individual case when such small claims are at stake.  *See In re Baycol*

16  *Cases I & II*, 51 Cal. 4th 751, 758 (2011) (explaining that a dismissal of class claims is

17  effectively the "death knell" of the case, despite survival of individual claims).  In other

18  words, for cases where individual damages are relatively small, denial of class

19  certification results in a near-complete loss for Plaintiff as well as no recovery for the

20  putative class members, who are shut out of the action.  Thus, if the putative Class had

21  not been certified, the value of Plaintiff's case would have been reduced to a fraction of

22  the value of this Settlement; indeed, Defendant would have likely offered no money to

23  settle the class-wide claims if certification had been denied.

24        Finally, early resolutions save time and money that would otherwise go to

25  litigation.  Parties' resources, as well as the Court's, will be further taxed by continued

26  litigation.  And if this action had settled following additional litigation, the settlement

27  amount would likely have taken into account the additional costs incurred, and there

28  may have been less available for Class Members.  Cost savings is one reason why

California policy strongly favors early settlement.  *See Neary v. Regents of University of California*, 3 Cal. 4th 273, 277 (1992) (explaining the high value placed on settlements and observing that "[s]ettlement is perhaps most efficient the earlier the settlement comes in the litigation continuum.").  This concern also supports settlement.

In summary, although Plaintiff and her counsel maintain a strong belief in the underlying merits of the claims, they also acknowledge the significant challenges posed by continued litigation through certification and/or at the merits stage.  Accordingly, when balanced against the risk and expense of continued litigation, the settlement is fair, adequate, and reasonable.  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes").

### D.    The Proposed PAGA Settlement Is Reasonable

Pursuant to the Settlement Agreement, $7,500 from the Class Settlement Amount will be paid directly to the LWDA in satisfaction of Plaintiffs' PAGA claims. (Settlement Agreement ¶ 16.)  This result was reached after good-faith negotiation between the parties.  Where PAGA penalties are negotiated in good faith and "there is no indication that [the] amount was the result of self-interest at the expense of other Class Members," such amounts are generally considered reasonable.  *Hopson v. Hanesbrands Inc.*, Case No. 08-00844, 2009 U.S. Dist. LEXIS 33900, at *24 (N.D. Cal. Apr. 3, 2009); *see*, *e.g.*, *Nordstrom Com. Cases*, 186 Cal. App. 4th 576, 579 (2010) ("[T]rial court did not abuse its discretion in approving a settlement which does not allocate any damages to the PAGA claims.").

### E.    The Proposed Class Representative Enhancement Payment Is Reasonable

The Settlement provides for a Class Representative Enhancement Payment of $10,000 to Cherish Nunnally for her services on behalf of the Settlement Class and for

1  agreeing to broader releases than those required of other Class Members.[5] "Incentive

2  awards are fairly typical in class action cases . . . Such awards are discretionary and are

3  intended to compensate class representatives for work done on behalf of the class . . . ."

4  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (citing 4 *William B.*

5  *Rubenstein et al.*, *Newberg on Class Actions* § 11:38 (4th ed. 2008)).  These payments

6  work both as an inducement to participate in the suit and as compensation for time spent

7  in litigation activities.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 463 (describing

8  the service award as an incentive to the class representatives); *Matter of Continental*

9  *Illinois Securities Litig.*, 962 F.2d 566, 571 (7th Cir. 1992) (stating that an

10  enhancement award should be in such an amount "as may be necessary to induce [the

11  class representative] to participate in the suit").

12      Plaintiff will file a formal motion for the negotiated Class Representative

13  Enhancement Payment once preliminary approval of the Settlement is granted.

14      **F.    The Negotiated Attorneys' Fees and Costs Are Reasonable**

15      Under California law,[6] the common fund method for awarding attorneys' fees is

16

17  [5] The amount of the enhancement payment is reasonable by reference to the
18  amounts that district courts in this Circuit have repeatedly found to be reasonable for
    wage and hour class action settlements.  *See, e.g.*, *Bernal v. Davita, Inc.*, Case No. 5:12-
19  cv-03255-PSG, *2 (N.D. Cal. Jan. 14, 2014) ($10,000 incentive payment in $3.4 million
    wage-and-hour class settlement); *York v. Starbucks Corp.*, No. 08-07919 GAF, Dkt. No.
20  239, at *4 (C.D. Cal. Oct. 29, 2013) (approving enhancement award of $10,000 in a $3
    million wage-and-hour class settlement); *Ross v. US Bank Nat'l Ass'n*, No. 07-02951-SI,
21  2010 U.S. Dist. LEXIS 107857 (N.D. Cal. Sept. 29, 2010) (approving enhancement
    awards of $20,000 each to four class representatives in a $3.5 million settlement of an
22  employment class action); *Stevens v. Safeway, Inc.*, No. 05-01988, 2008 U.S. Dist.
    LEXIS 17119, **34-37 (C.D. Cal. Feb. 25, 2008) ($20,000 and $10,000 award);
23  *Amochaev v. Citigroup Global Markets, Inc.*, No. 05-1298 PJH (N.D. Cal. Aug. 13,
    2008) (approving enhancement awards of $50,000 and $35,000 to employees in light of
24  factors that included fear of workplace retaliation).
       [6] In diversity actions, federal courts look to state law in determining whether a
25  party has a right to attorneys' fees and how to calculate those fees.  *Mangold v. Calif.*
    *Public Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) ("Ninth Circuit precedent
26  has applied state law in determining not only the right to fees, but also in the method of
    calculating the fees").  The state law governing the underlying claims in a diversity
27  action "also governs the award of fees."  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043,
    1047 (9th Cir. 2002).  Because CAFA operates to modify the diversity requirement, "the
28  *Erie* doctrine still applies so that state substantive law governs such claims in federal
    court."  *See* Tashima & Wagstaffe, Rutter Group Practice Guide: Federal Civil

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1   appropriate where, as here, attorneys have been instrumental in creating a settlement

2   fund that benefits all class members.  *See Serrano v. Priest*, 20 Cal. 3d 25, 35 (1977)

3   (noting that federal and state courts have long recognized that when attorneys create a

4   common fund that benefits a class, the attorneys have an equitable right to be

5   compensated from that fund); *Lealao v. Beneficial Cal. Inc.*, 82 Cal. App. 4th 19, 48

6   (2000) ("Courts agree that, because the percentage-of-the-benefit approach is 'results

7   oriented rather than process-oriented, it better approximates the workings of the

8   marketplace' than the lodestar approach." [citation omitted]).  Although California has

9   no benchmark, California courts routinely award attorneys' fees equalling approximately

10  one-third of the common fund's total potential value or higher.[7]  *See, e.g., Chavez v.*

---

12  Procedure Before Trial, California & 9th Cir. Editions (The Rutter Group, 2015)
    paragraph 10:497.5.  As the Ninth Circuit observed, "even after CAFA's enactment,
13  *Erie*-related doctrines ensure that, for the most part, removal of a CAFA case from state
    to federal court produces a change of courtrooms and procedure rather than a change of
14  substantive law."  *McAtee v. Capital One, F.S.B.*, 479 F.3d 1143, 1147 (9th Cir. 2007).
    [7]   The amounts of the requested incentive awards are also reasonable by reference
15  to the amounts that district courts in this Circuit  have repeatedly found to be reasonable
    for wage and hour class action settlements.  *See also, Albrecht v. Rite Aid Corp.*, No.
16  729219 (San Diego Super. Ct.) (35% award); *Weber v. Einstein Noah Restaurant
    Group, Inc.*, No. 37-2008-00077680 (San Diego Super. Ct.) (40% award); *Kenemixay v.
17  Nordstroms, Inc.*, No. BC318850 (L.A. Super. Ct.) (50% award); *Leal v. Wyndham
    Worldwide Corp.*, No. 37-2009-00084708 (San Diego Super. Ct.) (38% award); *Gomez
18  and LaGaisse v. 20 20 Communications*, No. RIC 528973 (Riverside Super. Ct.) (33%
    award); *Acheson v. Express LLC*, No. 109CV135335 (Santa Clara Super. Ct.) (33%
19  award); *Chin v. Countrywide Home Loans, Inc.*, No.: 39-2010-00252741-CU-OE-STK
    (San Joaquin Super. Ct.) (30% award); *Ethridge v. Universal Health Servs.*, No.
20  BC391958 (L.A. Super. Ct.) (33% award); *Magee v. Am. Residential Servs. LLC*, No.
    BC423798 (L.A. Super. Ct.) (33% award); *Blue v. Coldwell Banker Residential
21  Brokerage Co.*, No. BC417335 (L.A. Super. Ct.) (33% award); *Silva v. Catholic
    Mortuary Servs., Inc.*, No. BC408054 (L.A. Super. Ct.) (33% award); *Mares v. BFS
22  Retail & Comm. Operations LLC*, No. BC375967 (L.A. Super. Ct.) (33% award); *Blair
    et al. v. Jo-Ann Stores, Inc.*, No. BC394795 (L.A. Super. Ct.) (33% award); *Perez and
23  Comeaux v. Standard Concrete*, No. 30-2008-00211820 (Orange County Super. Ct.)
    (33% award); *Ward v. Doyon Sec. Servs., LLC*, No. BS 900057 (San Bernardino Super.
24  Ct.) (33% award); *Barrett v. The St. John Companies*, No. BC354278 (L.A. Super. Ct.)
    (33% award); *Clymer and Benton v. Candle Acquisition Co.*, No. BC328765 (L.A.
25  Super. Ct.) (33% award); *Dunlap v. Bank of America, N.A.*, No. BC328934 (L.A. Super
    Ct.) (33% award); *Taylor v. Ross Stores, Inc.*, No. RCV 065453, JCCP 4331 (San
26  Bernardino Super. Ct.) (33% award); *Case et al. v. Toyohara America Inc.*, No.
    BC328111 (L.A. Super. Ct.) (33% award); *Sunio v. Marsh USA, Inc.*, No. BC328782
27  (L.A. Super Ct.) (33% award); *Chalmers v. Elecs. Boutique*, No. BC306571 (L.A.
    Super. Ct.) (33% award); *Boncore v. Four Points Hotel ITT Sheraton*, No. GIC807456
28  (San Diego Super. Ct.) (33% award); *Vivens v. Wackenhut Corp.*, No. BC290071 (L.A.

*Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n.11 (2008) ("[S]tudies show that . . . fee awards in class actions average around one-third of the recovery."); Eisenberg & Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, J. of Empirical Legal Studies, Vol. 1, Issue 1, 27-78, March 2004, at 35 (independent studies of class action litigation nationwide have come to a similar conclusion that a one-third fee is consistent with market rates).

Plaintiff will file a formal motion for the negotiated attorneys' fees and costs once preliminary approval of the Settlement is granted.

**G.      The Proposed Class Notice Adequately Informs Class Members About The Case And Proposed Settlement**

The proposed class settlement notice and claims administration procedure satisfy due process.  Rule 23(c)(2) of the Federal Rules of Civil Procedure requires the Court to direct the litigants to provide Class Members with the "best notice practicable" under the circumstances, including "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173, 94 S. Ct. 2140, 2150, 40 L. Ed. 2d 732, 746 (1974).  Under Rule 23(c)(2), notice by mail provides such "individual notice to all members." *Id.*  Where the names and addresses of Class Members are easily ascertainable, individual notice through the mail constitutes the "best notice practicable." *Id.* at 175.

The Notice of Class Action Settlement ("Class Notice") jointly drafted and approved by the Parties, provides Settlement Class Members with all required information so that each member may make an informed decision regarding his or her participation in the Settlement.  The Notice provides information regarding the nature of the lawsuit; a summary of the substance of the settlement terms; the class definition; the deadlines by which Class Members must submit Claim Forms, opt outs, or objections; the date for the final approval hearing; the formula used to calculate settlement

---

Super. Ct.) (31% award); *Crandall v. U-Haul Int'l., Inc.*, No. BC178775 (L.A. Super. Ct.) (40% award).

payments; a statement that the Court has preliminarily approved the settlement; and a statement that Class Members will release the settled claims unless they opt out. Accordingly, the Notice satisfies the requirements of Rule 23(c)(2).

In summary, the Notice and Claim Form summarize the proceedings and the terms and conditions of the Settlement in an informative and coherent manner, complying with the statement in *Manual for Complex Litigation*, *supra*, that "the notice should be accurate, objective, and understandable to Class Members . . . ." *Manual for Complex Litigation*, Third (Fed. Judicial Center 1995) ("Manual") § 30.211. The Notice Packet states that the Settlement does not constitute an admission of liability by Defendant, and that Final Approval has yet to be made. Accordingly, the Notice Packet complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. Rule 23(c)(2)and (e); *Manual* §§ 8.21, 8.39; *Manual* §§ 30.211, 30.212.

The Claims Administrator will mail the Class Notice, together with the Claim Form (collectively "Notice Packet"), to all Settlement Class Members via first class United States mail. (Settlement Agreement ¶ 42.) Before mailing the Notice Packets, the Claims Administrator will verify the addresses produced by Defendant for each Class Member using the National Change of Address Database, or a similar database. (*Id*. at ¶ 43.) In the event Notice Packets are returned as undeliverable, the Claims Administrator will attempt to locate a current address using, among other resources, a computer/SSN and "skip trace" search to obtain an updated address. (*Id.*) This method was negotiated by the Parties to maximize the Class Member response rate while ensuring cost effective administration of the Settlement.

## IV.    CONCLUSION

The Parties have negotiated a fair and reasonable settlement of claims. Having appropriately presented the materials and information necessary for preliminarily approval, Plaintiff's request that the Court preliminarily approve the settlement.

1  Dated:  June 9, 2016                    Respectfully submitted,

2                                          Capstone Law APC

3                                  By:  _____

4                                          Raul Perez
                                           Melissa Grant
5                                          Arnab Banerjee
                                           Ruhandy Glezakos
6
                                           Plaintiff Cherish Nunnally
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT